UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE HALAL GUYS FRANCHISE INC.,

                **Plaintiff,**

-against-

JAIME DAEZ,

                **Defendant.**

<u>**COMPLAINT**</u>

Docket No. _____

    Plaintiff The Halal Guys Franchise Inc., by its attorneys, Kaufmann Gildin & Robbins LLP, respectfully alleges as follows:

### THE PARTIES

1. Plaintiff The Halal Guys Franchise Inc. ("THG") is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Astoria, New York.

2. Upon information and belief, Defendant Jaime Daez ("Daez") is an individual who resides at 3 Cerrada Street, Urdaneta Village, Makati, Meto Manila, Philippines 1225.

### JURISDICTION

3. This Court has original subject matter jurisdiction pursuant to 15 U.S.C. §1121(a) and 28 U.S.C. §1338(a) as to claims asserted under the Lanham Act, 15 U.S.C. §1051 *et. seq.* This Court also has original jurisdiction over the claim of unfair competition pursuant to 28 U.S.C. §1338(b).

4. This Court has original subject matter jurisdiction as to the claims other than those based on the Lanham Act under 28 U.S.C. §1367, because those claims are so related to the claims brought under the Lanham Act that they form a part of the same case or controversy.

5. This Court has original subject matter jurisdiction as to the claims other than those based on the Lanham Act under 28 U.S.C. §1332, in that the parties are citizens of a state and a foreign state and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is appropriate in this district under 28 U.S.C. §1391(b) because a substantial part of the

events or omissions giving rise to the claim occurred in this district and the defendant is subject to the court's personal jurisdiction with respect to this action in this district.

7. This Court has personal jurisdiction over the defendant pursuant to CPLR §302.

## THG'S SYSTEM AND MARKS

8. THG operates and licenses others to operate restaurants under the "The Halal Guys" name.

9. Through the expenditure of time, skill, effort and money, THG and its affiliates have developed and are the sole and the exclusive owners of a number of trademarks, service marks and trade names (the "Trademarks") which have been used in the development, organization and operation of a system of restaurants serving signature meats and sauces over rice and other popular American street food items prepared to Halal standards.

10. THG and its predecessors have entered into Franchise Agreements for the operation of The Halal Guys restaurants at various locations throughout the United States and the world, pursuant to which THG and its predecessors license others to operate The Halal Guys restaurants using THG's Trademarks and System.

11. THG's System consists of the manner in which the Franchisee is licensed to operate the The Halal Guys restaurant, the method of doing business, and certain other trade secrets and proprietary information, as designated and adopted by THG and its predecessors.

12. THG and its predecessors have developed the Trademarks, for use in the operation of the licensed The Halal Guys restaurants, which include the following principal trademarks, which, among several others, have been registered by THG or its affiliates on the Principal Register of the United States Patent and Trademark Office:

| MARK | FEDERAL REGISTRATION NO. | REGISTRATION DATE |
|---|---|---|
| The Halal Guys (design mark)™ | 4,253,743 | December 4, 2012 |
| The Halal Guys (word mark)™ | 4,253,742 | December 4, 2012 |
| The Halal Guys (design mark)™ | 4,254,017 | December 4, 2012 |

13. The foregoing registrations are valid, subsisting, in full force and effect and cover the goods and services identified in the registration certificates. The registrations are incontestable under the Lanham Act, 15 U.S.C. §1065.

14. The Trademarks have been used exclusively by THG, its predecessors and its designated licensees in connection with the operation of The Halal Guys restaurants.

15. Since its first use, the name "The Halal Guys" has become universally associated with THG and its predecessors' unique and particular plan of food service operation. As a result, THG owns common law trade name rights and trademark rights in the name "The Halal Guys" and the other Trademarks. By virtue of the long use and promotion and the resulting fine public reputation of the trade name "The Halal Guys," there is a secondary meaning in the name "The Halal Guys" and the Trademarks in that the public associates the products sold in connection with the Trademarks as originating from a single source.

16. The Trademarks have become valuable assets of substantial and inestimable worth to THG. The Trademarks are symbols of quality foods served by THG's nationwide and global chain of restaurants. THG has a vital economic interest in protecting its name and the Trademarks. The preservation and protection of its name and the Trademarks are essential to the maintenance of the quality of "The Halal Guys" restaurants and the goodwill and reputation associated with them.

### THE PARTIES' FRANCHISE AGREEMENT AND RELATED AGREEMENTS

17. THG offers franchises for a quick-service restaurant serving signature meats and sauces over rice and other popular American street food items prepared to Halal standards for dine-in and take-out. The franchised restaurants operate under the trade name and trademark "The Halal Guys," and additional

service marks, trademarks, trade names, logos, emblems and other indicia of origin.

18. The restaurants are established and operated under a comprehensive and unique system created and owned by THG (the "System"), which includes distinctive signage, interior and exterior design, décor and color schemes; special recipes and menu items, including proprietary products and ingredients; uniform standards, specifications, and procedures for operation; quality and uniformity of products and services offered; inventory, management and financial control procedures; training and assistance; and advertising.

19. THG offers the right to establish and operate a franchised "The Halal Guys" Restaurant under the terms of a Single Unit Franchise Agreement and, under certain circumstances, THG offers the right to develop multiple franchised Restaurants within a specifically described geographic territory under the terms of a Master Franchise and License Agreement.

20. Prior to his execution of the Franchise Agreement, Daez met with THG's representatives in New York, New York to discuss the "The Halal Guys" franchise opportunity and to negotiate the Franchise Agreement, which meetings included meetings at THG's offices in New York and at THG's annual franchise convention at the Javitz Center in New York City.

21. On July 8, 2014, THG and Daez entered into an The Halal Guys Franchise Inc. Master Franchise and License Agreement (the "MFLA"), pursuant to which Daez was granted the right, and Daez undertook the obligation, to establish and operate twenty (20) "The Halal Guys" Restaurants within a designated territory pursuant to the terms of the Franchise Agreement; (b) to solicit sub-franchisees to establish and operate "The Halal Guys" restaurants and to establish and operate multiple "The Halal Guys" restaurants; and, (c) to use the Proprietary Marks and System solely in connection therewith.

22. On July 9, 2014, THG and Daez entered into a The Halal Guys Franchise Inc. Direct Franchise Agreement (the "Franchise Agreement"), pursuant to which Daez was granted a license, and Daez undertook the obligation, to operate a "The Halal Guys" Restaurant at an approved location for twenty years and to use THG's proprietary marks and System in connection therewith.

23.  Pursuant to the parties' Franchise Agreement, Daez has paid money to and corresponded with THG in New York.

24.  Subsequent to July 8, 2014, Daez, with THG's permission, opened seven (7) franchised The Halal Guys Restaurants (the "Restaurants") within the territory identified in the MFLA at the following locations:

(i)  5L Mega Food Hall, SM Mega Fashion Hall, SM Mega Mall, Epifanio de los Santos Avenue, Ortigas Center, Mandaluyong, Metro Manila, Philippines (the "Mega Mall Restaurant");

(ii)  B6 902, Fully Booked Building, Bonifacio High Street, Taguig City, Philippines, 1634 PH (the "Bonifacio Restaurant");

(iii)  Ground Floor, Fully Booked Building, Commerce Avenue, Alabang Town Center, Muntinlupa City, Philippines (the "Alabang Restaurant");

(iv)  SM North EDSA Main Building, 2/P SM City North EDSA, Bago Bantay, Quezon City, Philippines (the "North EDSA Restaurant");

(v)  Unit A414, 4th Floor, Eastwood Mall, Eastwood, Barangay, Bagumbayan, Quezon City, Philippines (the "Eastwood Restaurant");

(vi)  SM Mall of Asia, Pasay, Kalakhang, Maynila, Philippines (the "Mall of Asia Restaurant"); and,

(vii)  Ground Floor, Ayala Malls, The 30th, Meralco Avenue, Pasig City, Philippines (the "Ayala Restaurant").

25.  Each of Daez' seven (7) Restaurants are governed by the Franchise Agreement.

26.  Without THG's knowledge or consent, Daez has ceased operating and closed the Bonifacio Restaurant, the North EDSA Restaurant, the Eastwood Restaurant, and the Ayala Restaurant (together, the "Closed Restaurants").

27.  Daez continues to operate the Mega Mall Restaurant, the Alabang Restaurant and the Mall of Asia Restaurant (together, the "Open Restaurants") as "The Halal Guys" Restaurants, using THG's name, trademarks and proprietary System.

## DEFENDANT'S CONTRACTUAL OBLIGATIONS
## UNDER THE FRANCHISE AGREEMENT

28.  Under Article 1 of the Franchise Agreement, THG granted Daez a license to use THG's trademarks, service marks and System in connection with the operation of a "The Halal Guys" Restaurant.

29. Subsequent to the execution of the Franchise Agreement, THG granted Daez the right, and Daez undertook the obligation, to open six (6) additional "The Halal Guys" Restaurants pursuant to the terms and conditions of the Franchise Agreement.

30. Under Article 2 of the Franchise Agreement, Daez undertook the obligation to operate each of the Restaurants for initial term of twenty (20) years.

31. Pursuant to §4.1 of the MFLA, Daez was obligated to pay to THG an Initial Franchise Fee of $22,500 at the earlier of (i) ninety (90) days before the respective successive Restaurant opening or (ii) upon the execution of the respective Restaurant's lease.

32. Pursuant to §4.2 and §11.3 of the Franchise Agreement, as modified by §4.22 of the MFLA, Daez was required to pay THG: (i) a monthly Royalty Fee of six percent (6%) of the Restaurant's Gross Sales for the first franchised Restaurant developed; (ii) a monthly Royalty Fee of three percent (3%) of the Restaurants' Gross Sales for the second and all subsequent franchised Restaurants developed; and, (iii) a monthly contribution equal to one and one-half percent (1.5%) of each Restaurant's Gross Sales to THG's Worldwide Creative Marketing Fund.

33. Pursuant to §9.4 of the Franchise Agreement, Daez was obligated to send THG a monthly statement of the gross revenues of each of the franchised Restaurants.

34. Pursuant to §5.12.2 and §5.13 of the Franchise Agreement, Daez was obligated to purchase all proprietary sauces, mixes, food items, ingredients, supplies, materials, and other products used or offered for sale at the Restaurants solely from THG or from suppliers designated by THG.

35. Pursuant to §5.17 of the Franchise Agreement, Daez was required to record all sales at or from the Restaurants only on an "Aloha" POS System.

36. Pursuant to §13.3.2 of the Franchise Agreement and §14.2.2 of the MFLA, THG may terminate the Franchise Agreement and MFLA in the event that Daez failed to make prompt payment of any amounts due to THG and failed to correct such failure within thirty (30) days following written notice of default.

37. Pursuant to §13.2.2 of the Franchise Agreement and §14.2.1 of the MFLA, THG may terminate the Franchise Agreement and MFLA in the event that Daez ceases to operate or otherwise abandons any of the Restaurants or loses the right to possession of the premises where any of the Restaurants are located.

38. Pursuant to §14.13 of the Franchise Agreement, upon termination of the Franchise Agreement, Daez agreed to pay THG, in addition to the amounts owed thereunder, Liquidated Damages equal to the average monthly royalty Daez paid during the twelve (12) months of operation preceding the effective date of termination multiplied by (a) twenty-four (24), or (b) the number of months remaining in the term of the Franchise Agreement had it not been terminated, whichever is higher.

39. Pursuant to §14.7 of the Franchise Agreement and §15.7 of the MFLA, Daez agreed to pay THG all damages, costs and expenses (including reasonable attorneys' fees), incurred by THG subsequent to the termination or expiration of the Franchise Agreement and MFLA in connection with the enforcement of THG's post-termination rights (including the collection of unpaid past due amounts and liquidated damages).

40. Pursuant to Article 14 of the Franchise Agreement, upon termination of the Franchise Agreement, all rights granted thereunder immediately terminated, and Daez was obligated to: (i) immediately cease operating the Restaurants and thereafter, directly or indirectly, representing to the public or hold himself out as a present or former franchisee of THG; (ii) immediately and permanently terminate the use, in any manner whatsoever, of any confidential methods, procedures or and techniques associated with the System; the proprietary mark "The Halal Guys"; and all other proprietary marks and distinctive forms, slogans, signs, symbols and devices associated with the System.

41. Pursuant to §14.6 of the Franchise Agreement, upon termination of the Franchise Agreement, Daez was obligated to promptly pay all sums owing to the THG and its subsidiaries.

## THG'S DECLARATION OF DEFAULT AND TERMINATION

42. By letter dated and delivered June 8, 2018 ("June Notice of Default"), THG notified Daez that

he had defaulted under the Franchise Agreement and MFLA by virtue of his failure to pay Royalty Fees, Worldwide Creative Fund contributions, initial franchise fees, and other amounts past due.

43. Despite his receipt of the June Notice of Default, Daez failed to cure the defaults set forth therein.

44. At Daez' request, THG provided Daez with additional information concerning the amounts past due and owing by letter dated August 14, 2018 ("August Notice of Default"), and again demanded payment to avoid termination.

45. Despite his receipt of the June Notice of Default and August Notice of Default, Daez failed to cure the defaults set forth therein.

46. By letter dated December 19, 2018 and delivered on March 4, 2019 ("Notice of Termination"), THG notified Daez that the Franchise Agreement and MLFA were terminated, effective upon delivery of the Notice of Termination, and demanded compliance with Daez's post-termination obligations, including prompt payment of all past due Royalty Fees, Worldwide Creative Marketing Fund contributions, Initial Franchise Fees, other past due amounts, and Liquidated Damages.

47. Despite THG's termination of the Franchise Agreement and MLFA and THG's demands for performance of the post-termination obligations, Daez has failed, among other obligations, to pay all outstanding Royalty Fees, Worldwide Creative Marketing Fund contributions, Initial Franchise Fees, Liquidated Damages, and other past due amounts.

### FIRST CLAIM
### (Breach of Contract-Damages-Franchise Agreement)

48. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-47 above, with the same force and effect as if fully set forth herein.

49. As of December 31, 2018, Daez had failed to pay his required Royalty Fees, Worldwide Creative Marketing Fund contributions, Initial Franchise Fees and other past due fees in the aggregate amount of $213,272.75.

50. Daez has defaulted on the performance of his obligations under the Franchise Agreement and

MLFA.

51. THG has performed all of its obligations under the Franchise Agreement and MLFA.

52. THG is entitled to judgment on all amounts owed to it by Daez under the Franchise Agreement.

53. Pursuant to §4.3 of the Franchise Agreement, THG is entitled to collect interest on any late payments from the due date until paid at the rate of LIBOR plus 2% per annum.

54. Pursuant to §14.7 of the Franchise Agreement, in addition to the judgment entered in its favor, THG is entitled to recover reasonable attorneys' fees, court costs and all of THG's expenses in connection with this action.

## SECOND CLAIM
### (Breach of Contract – Liquidated Damages – Franchise Agreement)

55. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-47 above, with the same force and effect as if fully set forth herein.

56. Pursuant to §14.13 of the Franchise Agreement, upon termination of the Franchise Agreement, Daez is obligated to pay Liquidated Damages to THG, calculated in an amount equal to the average monthly royalty Daez paid during the twelve (12) months of operation preceding the effective date of termination multiplied by (a) 24, or (b) the number of months remaining in the term of the Franchise Agreement had it not been terminated, whichever is higher.

57. Daez is obligated to pay THG Liquidated Damages in connection with each of his seven (7) Restaurants, in the following amounts:

| | | |
|---|---|---|
| (a) | Mega Mall Restaurant: | $192,265.47 |
| (b) | Bonifacio Restaurant: | $237,586.01 |
| (c) | Alabang Restaurant: | $124,227.29 |
| (d) | North EDSA Restaurant: | $252,007.74 |
| (e) | Eastwood Restaurant: | $126,181.58 |
| (f) | Mall of Asia Restaurant: | $120,738.65 |
| (g) | Ayala Restaurant; | $364,575.95 |
| (h) | **(Total Liquidated Damages:** | **$1,417.582.70)** |

58. Pursuant to §14.7 of the Franchise Agreement, in addition to the judgment for Liquidated

Damages entered in its favor, THG is entitled to recover reasonable attorneys' fees, court costs and all of its expenses in connection with this action.

## THIRD CLAIM
### (Trademark Infringement)

59. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-47 above, with the same force and effect as if fully set forth herein.

60. THG and/or its affiliates is the owner of various trademarks and service marks (collectively, the "Trademarks"), which are registered in the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. §1051 and 1053). Several of THG's trademarks are incontestable under Section 15 of the Lanham Act (15 U.S.C. §1065).

61. THG has given notice to the public of its registration of the Trademarks as provided in the Lanham Act (15 U.S.C. §1111).

62. THG and its affiliates have developed the Trademarks at great expense so that today they are valuable and irreplaceable assets. The Trademarks have become favorably known in the minds of the purchasing public generally throughout the United States and various foreign countries, including the Philippines, as indicating the source, origin, and quality of THG's products and services.

63. THG polices the use of its Trademarks and service marks and demands high quality and compliance with its standards to protect the value of those marks.

64. Daez, solely by reason of the license granted to him by THG pursuant to the Franchise Agreement, had authority to use certain Trademarks in accordance with the terms and conditions of the Franchise Agreement.

65. Upon termination of the Franchise Agreement, Daez' authority to use the Trademarks was revoked, and Article 14 of the Franchise Agreement required Daez to thereupon immediately discontinue his use of all Trademarks, service marks, trade names, trade secrets, and the System owned or developed by THG or its affiliates.

66. Despite the termination of the Franchise Agreement and despite due demand by THG, Daez

has failed to immediately and fully cease and discontinue his use and display of the Trademarks. Rather, Daez continues to portray the Mega Mall Restaurant, the Alabang Restaurant and the Mall of Asia Restaurant as licensed "The Halal Guys" Restaurants by using, without license or other right, the Trademarks and by failing to completely de-image the Restaurants as required by the Franchise Agreement.

67. Daez' continued use of the Trademarks and complete failure to comply with the de-imaging requirements of the Franchise Agreement is an infringement of THG's rights in those marks in violation of 15 U.S.C. §1114(1) and infringes upon THG's goodwill, reputation, trademarks and service marks; creates a likelihood of injury to THG's business reputation; causes substantial likelihood of confusion as the relationship, if any, between THG and Daez; creates the appearance that Daez is still a duly licensed franchisee of THG; and otherwise competes unfairly with THG.

68. THG is entitled to a judgment for monetary relief, pursuant to 15 U.S.C. §1117, including actual damages, costs and reasonable attorneys' fees against Daez for his acts of infringement of the Trademarks for the time subsequent to the effective date of termination of the Franchise Agreement (March 4, 2019) through the time that Daez completely de-images each of the Restaurants as required by the Franchise Agreement.

### FOURTH CLAIM
### (Federal Unfair Competition)

69. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-47 above, with the same force and effect as if fully set forth herein.

70. Daez, after termination of his authority to operate the Restaurants and to use the Trademarks under the Franchise Agreement and with the intent and purpose of misleading the trade and the public, continues to operate three (3) of the Restaurants using and displaying the Trademarks by failing to de-image the Restaurants as required by the Franchise Agreement.

71. Daez' unlicensed use of the Trademarks comprises a false designation of origin or false representation, and constitutes the utilization of false descriptions and representations in interstate

commerce. Daez is falsely representing himself to the public as a "The Halal Guys" franchisee.

72. Daez acts are in violation of 15 U.S.C. §1125(a).

73. THG is entitled to a judgment for damages against Daez for his acts of unfair competition arising from his use of the Trademarks from the effective date of the termination of the Franchise Agreement (March 4, 2019) to the time Daez de-images the Restaurants as required by the Franchise Agreement.

## FIFTH CLAIM
### (Accounting and Unjust Enrichment)

74. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-47 above, with the same force and effect as if fully set forth herein.

75. Pursuant to §9.4 of the Franchise Agreement, Daez was obligated to send THG a monthly statement of the gross revenues of each franchise Restaurant and pursuant to §4.2 of the Franchise Agreement and §4.22 of the MFLA, Daez was required to pay THG a Royalty Fee calculated as a percentage of those gross revenues on a monthly basis in consideration for the license granted by THG under the Franchise Agreement.

76. Daez has operated and continues to operate three (3) of the Restaurants after the effective date of termination of the Franchise Agreement using THG's Trademarks, service marks, and System, without submitting monthly reports of his Restaurants' gross revenues or paying any Royalty Fees to THG.

77. Daez has been unjustly enriched by his unauthorized use of and benefit from, without due payment therefore, THG's Trademarks, service marks, trade dress, trade secrets and System at the Restaurants.

78. THG is entitled to an accounting of all business conducted by Daez since March 4, 2019 in connection with the unauthorized use of THG's Trademarks, trade dress, trade secrets, and System at the Restaurants.

## SIXTH CLAIM
### (Declaratory Judgment)

79. Plaintiff repeats, reiterates and realleges each and every allegation set forth in paragraphs 1-47 above, with the same force and effect as if fully set forth herein.

80. Pursuant to Article 13 of the Franchise Agreement and the terms of the Notice of Termination, THG terminated the Franchise Agreement effective March 4, 2019.

81. Despite the termination of the Franchise Agreement and in violation of his post-termination obligations, Daez continues to operate three (3) Restaurants as "The Halal Guys" Restaurants, and to use and display, without license, THG's Trademarks and service marks.

82. Daez continues to hold himself out as a "The Halal Guys" franchisee.

83. This action involves an actual controversy between the parties, within the scope and meaning of 28 U.S.C. §2201-2202.

84. Pursuant to the Declaratory Judgment Act (28 U.S.C. §2201, *et. seq.*), THG is entitled to a declaratory judgment by this Court that the Franchise Agreement terminated effective March 4, 2019 in accordance with the Notice of Termination and Article 13 of the Franchise Agreement.

85. THG is also entitled to a declaratory judgment by this Court, pursuant to 28 U.S.C. §2201, that Daez is not authorized (a) to use THG's Trademarks and service marks; (b) to operate the Restaurants as "The Halal Guys" Restaurants, or (c) to hold himself out as a "The Halal Guys" franchisee.

**WHEREFORE**, plaintiff The Halal Guys Franchise Inc. demands judgment against defendant Jaime Daez as follows:

    A.    On the First Claim, judgment in the amount of $221,755.59, plus applicable contractual interest, costs and attorneys' fees;

    B.    On the Second Claim, judgment in the amount of $1,417.852.70, plus applicable contractual interest, costs and attorneys' fees; and,

    C.    On the Third and Fourth Claims, judgment in the amount to be determined at trial for damages resulting from Daez' acts of unfair competition and trademark infringement, including treble damages for infringement, costs and reasonable attorneys' fees pursuant

        to 15 U.S.C. §1117;

D.    On the Fifth Claim, an accounting of all business conducted by Daez since March 4, 2019 including, without limitation, an accounting of the gross revenues at the Restaurants, and a judgment in an amount to be determined at trial for damages based upon Daez' unjust enrichment;

E.    On the Sixth Claim, entry of declaratory judgment by this Court, pursuant to 28 U.S.C. §2201, that the Franchise Agreement was effectively terminated as of March 4, 2019; and, that Daez is unauthorized (a) to use THG's Trademarks and service marks; (b) to operate the Restaurants as "The Halal Guys" Restaurants or (c) to hold himself out as in "The Halal Guys" franchisee; and,

F.    Awarding plaintiff its costs, attorneys' fees and such other and further relief, including pre- and post-judgment interest, to which it may be entitled.

Dated:  New York, New York  
          March 8, 2019

KAUFMANN GILDIN & ROBBINS LLP

By: _____  
Daniel Gildin  
Kevin M. Shelley  
767 Third Avenue, 30th Floor  
New York, New York 10017

*Attorneys for Plaintiff*  
*The Halal Guys Franchise Inc.*

Doc Num 273969-V2